UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID W. BURKMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BUREAU OF PRISONS, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 21-3338 (TSC) |

**MEMORANDUM OPINION**

Plaintiff David W. Burkman sues the Bureau of Prisons, its Director, and several of its employees for alleged violations of his constitutional and statutory rights while he was incarcerated at the Federal Correctional Institution, Danbury ("FCI Danbury") in Connecticut. Plaintiff filed a Complaint on December 14, 2021 and an Amended Complaint on July 5, 2022. *See* Am. Compl., ECF No. 11. Before the court are Defendants' Motion to Transfer, or, in the Alternative, to Dismiss, ECF No. 5 ("Defs.' Mot."), and Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 12. Plaintiff opposes Defendants' motion. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer or Dismiss, ECF No. 13 (Pl.'s Opp'n"). For the reasons set forth below, the court will GRANT Defendants' motion to transfer. Accordingly, the court will not reach Defendants' motion to dismiss in the alternative, and will DENY without prejudice Plaintiff's motion for leave to amend.

**I.　　LEGAL STANDARD**

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts use a two-step test to determine if a case should be transferred under § 1404(a): whether (1) the action "might have been brought" in the

movant's choice of forum, and (2) the private and public "interest factors" that weigh in favor of or against transfer. *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014). The moving party "bears the burden of establishing that transfer of the action is proper." *Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001)). District courts "retain broad discretion in balancing the asserted convenience and fairness to the parties." *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Sheraton Operating Corp. v. Just Corp. Travel*, 984 F.Supp. 22, 25 (D.D.C. 1997)).

## II.     ANALYSIS

### A. <u>Where the Action Might Have Been Brought</u>

Under the first step, an action "might have been brought" against a federal defendant where (1) "a defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated;" or (3) a "plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1); *Nat'l Park Serv.*, 75 F. Supp. at 356. Because the court finds that the District of Connecticut satisfies the second test for proper venue, it need not reach the first or third.

A substantial part of the events giving rise to Plaintiff's claims occurred at FCI Danbury in Danbury, Connecticut. "In determining whether the 'substantial part' requirement is met, courts should undertake a 'commonsense appraisal' of the 'events having operative significance in the case.'" *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 (D.D.C. 2016) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 & n.62 (D.C. Cir. 1978)). The gravamen of Plaintiff's complaint is that while he was incarcerated at FCI Danbury, prison officials repeatedly refused to accommodate his religious practices and preferences. Am. Compl. ¶ 1, ECF No. 11. As might be expected, therefore, virtually all the unlawful acts of which he complains occurred at that

facility—for example, the failure to accommodate of certain dietary restrictions, *id*. ¶¶ 19-20, 68, 72, 74-75; the denial of certain requested Holy Days, *id*. ¶¶ 156, 159; and restrictions on certain religious paraphernalia, *id*. ¶¶ 173, 175-76, 216-18. Plaintiff argues that these deprivations constitute violations of his "religious rights under the Free Exercise Clause of the First Amendment, Equal Protection Clause of the Fifth and Fourteenth Amendments and under the Religious Freedom Restoration Act." *Id*. ¶¶ 257-81. Consequently, the court concludes that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Connecticut.

Plaintiff's counterarguments are unavailing. In essence, he asserts that the decisions of which he complains were made by mere "subordinates" at FCI Danbury, acting under the direction of "the order-givers and policymakers residing in the District of Columbia." Pl.'s Opp'n at 8-10. Plaintiff mistakes the relevant statutory test for venue, which asks where "a substantial part of the *events or omissions* giving rise to the claim occurred," not where the decision-making underlying those events should ultimately be traced. 28 U.S.C. § 1391(b)(2) (emphasis added). Indeed, the D.C. Circuit has cautioned that "Courts in this circuit must examine . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). This case illustrates that point: There is no question that the "events having operative significance"—the alleged denial of Plaintiff's legally required accommodations at FCI Danbury—occurred in Connecticut, *Robinson*, 200 F. Supp. 3d at 113, but Plaintiff has nevertheless attempted to bring suit in the District of Columbia by naming federal officials who reside here as defendants. However, because it is clear that this suit "could

have been brought" in the District of Connecticut, the court concludes that the first step of the transfer analysis is satisfied.

## B. <u>Private and Public Interest Factors</u>

Under the second step of the transfer analysis, the court considers a variety of factors related to the private and public interest. Here, those factors collectively counsel transferring the case to the District of Connecticut.

1. <u>Private interest factors</u>

The private interest factors include:

> 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and 6) the ease of access to sources of proof.

*Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012) (citations omitted). These factors weigh in favor of transfer.

With regard to the first and second factors, although Plaintiff and Defendant have different forum choices, those choices are not necessarily granted equal weight. "When the plaintiff's choice is not its home forum," for example, his preference "applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quotation marks and citation omitted). The parties dispute where Plaintiff should be considered to reside, but no one asserts that it is in the District of Columbia. *Compare* Defs.' Mot. at 5, *with* Pl.'s Opp'n at 3-4. Likewise, the weight of Plaintiff's choice is "weakened" where—as in this case—"there is an insubstantial factual nexus between the case and the plaintiff's chosen forum." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (quotation

omitted). By contrast, Defendant's choice of forum is much more closely tied to the factual allegations and claims in this case. As a result, Defendant's choice outweighs Plaintiff's.

The third factor is even more straightforward. The court has already established that most of the events or omissions underlying Plaintiff's claims occurred at FCI Danbury. *See supra* Section II.A. It follows that his "claim[s] arose" there, too. *Sheffer*, 873 F. Supp. 2d at 375. As a result, this factor strongly favors transfer.

The final three factors also favor transfer, for interrelated reasons. It will be easier to assemble the relevant parties, witnesses, and evidence in the District of Connecticut. That is true even for any Defendants not already living there. *See Starnes v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974) ("[T]he greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered, and one that the prisoner cannot eliminate by stating his preference for this forum."). As Defendants observe, Plaintiff names more than forty individuals associated with FCI Danbury who could be potential witnesses in this case. *See* Defs.' Mot. at 10-11 (citing references to those individuals in Plaintiff's Complaint). The comparative difficulty of summoning them to the District of Columbia rather than Connecticut would be significant. Plaintiff's suggested solution for that problem—having witnesses appear via video teleconference, *see* Pl.'s Opp'n at 12-13—is disfavored, available only "[f]or good cause in compelling circumstances and with appropriate safeguards," Fed. R. Civ. P. 43. And in any event, the parties could more easily access the likely evidence in this case, such as FCI Danbury's records and facility, if the litigation were based in the District of Connecticut.

2. Public interest factors

The public interest factors include: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of

the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu,* 858 F. Supp. 2d 116, 123 (D.D.C. 2012). On balance, these factors favor transfer.

The first and second factors raise no obstacles to transfer. The first factor is neutral because "all federal courts should have the requisite familiarity with federal law." *Defs. of Wildlife v. Jewel*, 74 F. Supp. 3d 77 (D.D.C. 2014) (citing *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.C. Cir. 1987) (noting that federal courts "are presumptively competent to decide" issues of federal law)). And both parties agree that because this court's average caseload is only modestly higher than the District of Connecticut's, the second factor "is neutral or, at best, only slightly moves the needle in favor of transfer." Defs.' Mot. at 16; Pl.'s Opp'n at 18. The court consequently does not grant much weight to these factors.

Overall, the third and "most importan[t]" public interest factor in this case favors transfer. *Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298 (D.D.C. 2017). As a general matter, courts have "a strong interest in having plaintiff's claims 'resolved in the locale where they arise'" and so look to the location "of the operative events." *Treppel v. Reason*, 793 F. Supp. 2d 429, 439-40 (D.D.C. 2011) (quoting *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996)). That remains true even where, as here, a Plaintiff invokes federal law or argues that a national policy is at stake. *See, e.g.*, *City of W. Palm Beach v. United States Army Corps of Engineers*, 317 F. Supp. 3d 150 (D.D.C. 2018); *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006). Thus, courts in this District have transferred cases challenging both conditions of incarceration and those conditions' underlying policies to the facility's district, reasoning that while the "existence of a national policy issue . . . is a factor to

be considered," where a "Plaintiff raises claims 'related to his particular circumstances,'" it is primarily "the *implementation* of policy . . . at issue," and "venue is more appropriately laid" in the district of incarceration. *Huskey v. Quinlan*, 785 F. Supp. 4 (D.D.C. 1992) (citing *Starnes*, 512 F.2d at 929). The court reaches the same conclusion here.

\* \* \*

Finding that this case could have been brought in the District of Connecticut, and that both the private and public interest weigh in favor of transferring the case there, the court will grant Defendants' motion to transfer. Accordingly, the court will deny without prejudice Plaintiff's motion for leave to file a second amended complaint, but Plaintiff may choose to renew that motion after transfer. Likewise, Defendants may choose to file a motion to dismiss after transfer. *See Bourdon*, 235 F. Supp. 3d at 309.

### III.   CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Transfer, ECF No. 5, and DENY without prejudice Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 12. A corresponding Order will accompany this Memorandum Opinion.

Date: March 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge